COUNCIL OF UNIT OWNERS OF BREAKWATER HOUSE CONDOMINIUM, on Behalf of the Association of Owners, James P. Brennan, Letitia R. Brennan, Sharon Krager, Richard L. McMahon, Anne R. McMahon, Michael C. Pistole, Rolanda A. Port, Jacqueline Sunderland, Leslie Finer, Pearson Sunderland, Susan Kovarick, Joseph W. Kovarick, Barbara W. Kovarick and Paula J. Kovarick, Plaintiffs Below, Appellants,

v.

John A. SIMPLER, Jr., and T. Richard Soraci, Defendants and Third–Party Plaintiffs Below, Appellees,

Shore Building Supply, Inc., Third–Party Defendant and Fourth–Party Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Nov. 5, 1991.
Decided: Jan. 21, 1992.

Craig A. Karsnitz (argued), Richard A. Levine, Neilli Mullen Walsh of Young, Con-

away, Stargatt & Taylor, Wilmington, for plaintiffs below, appellants.

Jeffrey M. Weiner (argued), Wilmington, for defendants and third-party plaintiffs below, appellees John A. Simpler, Jr. and T. Richard Soraci.

Norman C. Barnett of Schab & Barnett, Georgetown, for third-party defendant and fourth-party plaintiff below, appellee Shore Bldg. Supply, Inc.

Before CHRISTIE, C.J., HORSEY, and MOORE, JJ.

HORSEY, Justice:

This is an interlocutory appeal from Superior Court's grant of partial summary judgment for defendants. The court dismissed two of plaintiffs' claims for damages against developers for breach of implied warranties of habitability and of good quality and workmanship. The claims arise from the defendant developers' reconstruction and conversion of an existing apartment building for sale as condominium units.

The trial court found no cognizable claim under Delaware decisional law for breach of an implied warranty of habitability, distinct and apart from an implied warranty of good quality and workmanship. The court then ruled that because such a claim was confined at common law to new construction, plaintiffs' claim must also be dismissed because the complaint involved "construction ... on an older building." The court finally ruled that an implied warranty of good quality and workmanship lies only against builders and not against selling "developers." Because the defendants, though the vendors, were not directly involved in the design and physical reconstruction of the building units, they were held not subject to suit.

We accepted this interlocutory appeal to resolve issues regarding the application of a warranty of habitability and/or good quality and workmanship to the renovation of an older building by a vendor developer who is not a builder. Other jurisdictions appear to be in conflict and there is no reported Delaware decisional law directly on point.

We affirm the trial court's ruling that Delaware does not recognize an action based on an implied warranty of habitability, i.e., that construction is suitable for the purpose intended. We find such a claim to be redundant and subsumed within a claim based on an implied warranty of good quality and workmanship. However, we find error of law in the trial court's remaining rulings. We hold that a cause of action for breach of implied warranty of good quality and workmanship may lie not only in a contract involving new construction, but also in one involving older structures that have been substantially renovated or reconstructed. We further hold that a claim of implied warranty of good quality and workmanship may lie against vendor-developers, such as defendants, and is not confined to those who actually perform the construction work.

*Facts*

Plaintiffs, Council of Unit Owners and current unit owners of Breakwater House in Lewes, Delaware, filed suit in September 1989 against defendants John A. Simpler, Jr. and T. Richard Soraci for damages based on claims for breach of implied and express warranties in the design, renovation, reconstruction and conversion of an existing apartment house to condominium ownership. In 1986, defendants purchased a dilapidated 18–unit apartment house in Lewes for conversion into a 9–unit residential condominium development known as Breakwater House Condominium. The conversion of the apartment building required, in effect, gutting the interior of the structure and rebuilding it from the ground up. Defendants hired a building contractor to perform the reconstruction, who in turn employed subcontractors. The project took one year to complete at an approximate cost of $600,000. Defendants entered into contracts of sale with purchasers for the nine units.

In September 1989, plaintiffs filed suit, charging defendants with breach of implied and expressed warranties made in connec-

tion with the sale of the units. Counts one and two of the complaint alleged claims against defendants of breach of implied warranties. More specifically, plaintiffs alleged that defendants warranted "that the Condominium was of high quality design, construction and materials, was free of design and construction defects and deficiencies, was constructed in a good and workman like manner and in accordance with industry standards, and was fit for habitation."

In their answer, defendants deny the existence of any implied and/or express warranties, and assert by affirmative defense that plaintiffs' complaint fails to state a claim upon which relief can be granted. Thereafter defendants filed motions to dismiss the complaint and/or for judgment on the pleadings as to counts I and II based on claims of implied warranty of good workmanship and habitability. Defendants asserted that implied warranties are limited to new construction and do not apply to substantial renovation. Defendants also asserted that plaintiffs had notice of any construction defects and therefore could not assert implied warranty claims. Because the parties in the briefing of the motion submitted matters outside the pleadings, the court treated the motion as one for summary judgment. Super.Ct.Civ.R. 12(c).

Superior Court, relying upon an unreported Delaware decision, *Carroll v. Scatasti*, Del.Super., C.A. No. 82A–FE–1, Martin, J. (Nov. 8, 1982), concluded that even if Delaware recognized a common law warranty of habitability, its use should be restricted to cases involving a new house and a vendor-builder. Because Breakwater House was "an older building," the court, relying largely upon other unreported Delaware decisional law, *Carroll* and *Burkins v. Magness Construction Co.*, Del.Super., C.A. No. 78C–AU–107, Martin, J. (June 27, 1984), found "the implied warranty of habitability does not apply."

Addressing plaintiffs' count for breach of an implied warranty of good workmanship, the trial court ruled that such a warranty "runs [only] from the builder who actually does the construction work," and relied on *Bye v. George W. McCaulley & Son Co.*, Del.Super., 76 A. 621, 622 (1908). Since defendants had not been involved in the construction of the improvements, and did not hold themselves out to plaintiffs as contractors, the trial court granted partial judgment for defendants.

On appeal, plaintiffs assert that Superior Court erred as a matter of law, in two respects: (1) in refusing to extend the implied warranty of habitability or that of good quality and workmanship to a contract involving property which has been substantially reconstructed; and (2) in not finding either implied warranty to be actionable against the defendants as vendor-developers even though not directly engaged in the construction itself.

### Standard of Review

The issues before this Court involve the application of legal principles to undisputed facts. Thus, our "scope of review is whether the Superior Court erred as a matter of law in formulating or applying legal precepts." *Delaware Alcoholic Beverage Wholesalers v. Ayers*, Del.Supr., 504 A.2d 1077, 1081 (1986).

### Contentions of the Parties

Defendants concede that the record establishes that Breakwater House was "gutted" and substantially rebuilt, with only the walls and roof of the original structure remaining intact. However, defendants argue that the trial court correctly interpreted Delaware decisional law as confining the judicially created implied warranty of good quality and workmanship to new construction. Defendants contend that any extension of such a warranty to the conversion or substantial renovation of existing buildings into habitable units should be left to legislative action. *See* Delaware Unit Property Act, 25 *Del.C.*, ch. 22. Defendants further contend that the trial court correctly applied Delaware law in declining to extend any implied warranty to vendors other than builder-developers who actually undertake the construction work.

Finally, defendants argue that plaintiffs' implied warranty claims cannot stand because plaintiffs had actual notice of construction defects. The defendants presented this issue to the Superior Court in their motion to dismiss. The Superior Court did not consider it, however, finding defendants' other claims to be dispositive. Without a determination by the Superior Court as to whether genuine issues of material fact exist with regard to this claim, we decline to consider it as not ripe for review under Superior Court Civil Rule 56.

Plaintiffs claim that the Superior Court erred as a matter of law in finding that an implied warranty of good quality and workmanship could not apply to contracts involving renovated residences, and could only be enforced against an actual builder. They argue that the Superior Court has drawn two false distinctions: first, between condominiums constructed within an existing building and "new construction"; and second, between developers and builders.

### Analysis

There are therefore two limited questions before the Court: (1) Can a claim for breach of an implied warranty of good quality and workmanship lie in regard to a substantially renovated residence?; and (2) Can a claim for breach of an implied warranty of good quality and workmanship lie against a developer who is not the actual builder? The Superior Court found the answer to each of these questions to be in the negative.

### Implied Warranty of Habitability

■ The distinction, if any, between an implied warranty of habitability and an implied warranty of good quality and workmanship is blurred in decisional law throughout the country. *See* 77 Am.Jur.2d *Vendor and Purchaser,* § 335. We hold, however, that the Superior Court was correct in finding no implied warranty of habitability distinct from a warranty of good quality and workmanship. "Habitability" may be a component of good workmanship where the contract involves a residence, but there is no support in Delaware law for

the existence of an implied warranty of habitability as such. *See Koval v. Peoples,* Del.Super., 431 A.2d 1284 (1981); *Smith v. Berwin Builders, Inc.,* Del.Super., 287 A.2d 693 (1972); *Burkins v. Magness Construction Co.,* Del.Super., C.A. No. 78C–AU–107, Martin, J. (June 27, 1984); *Carroll v. Scatasti,* Del.Super., C.A. No. 82A–FE–1, Martin, J. (Nov. 8, 1982). We decline to create an entirely new cause of action in this area, characterized by particularly murky policy questions more appropriately resolved by the legislature. *See Bruce Farms, Inc. v. Coupe,* 219 Va. 287, 247 S.E.2d 400, 404 (1978).

### Implied Warranty of Good Quality and Workmanship

■ An implied warranty of good quality and workmanship does exist in Delaware, however. *Bye v. George W. McCaulley & Son Co.,* Del.Super., 76 A. 621, 622 (1908). *See Smith,* 287 A.2d 693. Other jurisdictions in applying such a warranty, have recognized no ground for relevant distinction between new construction and complete renovation within an existing shell. *See Towers Tenant Ass'n v. Towers Ltd. Partnership,* 563 F.Supp. 566 (D.D.C. 1983); *Licciardi v. Pascarella,* 194 N.J.Super. 381, 476 A.2d 1273 (1983) (denominating the warranty as one of habitability). We agree. If an implied warranty can attach to a contract for the addition of concrete steps to an existing building, as in *Bye,* it can also attach to a contract for the construction of condominiums within an existing shell.

Defendants argue that the judicial "expansion" of an implied warranty of good quality and workmanship to the conversion of apartments into condominium units would impermissibly intrude upon the domain of the legislature. The Unit Property Act is silent on the subject of implied warranties. 25 *Del.C.* ch. 22. However, we find the application of an implied warranty of good quality and workmanship to the construction of less than a completely new structure to be well within existing common law, and thus no "expansion". Conse-

quently, we find defendants' contentions to be without merit.

■ The Superior Court also found that under the rule in *Bye*, because defendants were not the builders of the condominiums, no implied warranty of good quality and workmanship could apply to them. It does not follow from *Bye*, however, that merely by interposing a third party, the developer, between the actual builder and the purchaser, that any implied warranty should be defeated. A developer who, under the circumstances of a particular case, would otherwise be subject to an implied warranty of good quality and workmanship cannot escape that warranty merely by arranging for the actual construction to be performed by his contractual agent. *See, e.g., Bolkum v. Staab*, 133 Vt. 467, 346 A.2d 210 (1975).

### *Conclusion*

Having found that the Superior Court erred as a matter of law in its resolution of the issues it considered, we vacate its ruling. However, our holding is limited. We hold only that an otherwise-existing implied warranty of good quality and workmanship will not be defeated merely because the contract to which it assertedly attaches is one involving substantial renovation supervised by a developer rather than completely new construction performed by a builder. We do not reach the further unresolved questions of whether any implied warranties actually survive under the terms of the contracts in this case, or what notice, if any, the plaintiffs may have had of construction defects.

\* \* \* \* \* \*

REVERSED and REMANDED for further proceedings consistent with this opinion.